## CAROLINA SAVINGS BANK v. EVANS.

1. Three appraisers appointed to lay off a homestead met and acted, but the return was agreed to and signed by only two of them. *Held*, that a majority having concurred, the return was valid, especially so as these three appraisers were all appointed by the court. MR. CHIEF JUSTICE SIMPSON, *dissenting.*

2. An ambiguous statute may be so construed as to avoid inconvenient results.

3. Where a return of homestead appraisers valuing the land at more than $1,000 and finding a division impracticable, was confirmed by the Circuit Court, the order properly directed the sheriff to proceed in the matter according to law. An order of sale would have been premature.

Before WITHERSPOON, J., Marion, March, 1887.

This was an appeal from the following decree :

Plaintiff in the above entitled execution filed exceptions, at a former term of court for Marion County, to the report of commissioners appointed to admeasure a homestead to the defendant, William T. Evans. Upon hearing said exceptions, Judge Cothran ordered that said report be set aside and annulled, and on the 15th day of October, 1886, by order, appointed Duncan Murchison, W. W. Hamilton, and J. D. Montgomery appraisers to set apart and admeasure to the said Wm. T. Evans a homestead in land and personal property. Said order directed that the appraisers should have no respect for the character of the estate of William T. Evans, but should lay off land just as if he held an absolute fee simple title.

Two of said appraisers, to wit, Duncan Murchison and J. D. Montgomery, on December 11, 1886, united in a return setting apart certain personal property, and stating that the land could not be divided so as to give the said Wm. T. Evans a homestead of the value of one thousand dollars without serious detriment of value to the balance. These two appraisers valued the land (640 acres) with buildings at three thousand dollars. The *third* appraiser, W. W. Hamilton, makes a separate return, in which he *concurs* with the other appraisers in the appraisement and set

off of *personal property*, but *dissents* from their judgment in relation to the *real estate*, stating in said return that the return of the other appraisers is not in compliance with the order of Judge Cothran, as he understood it, which required the actual setting off and admeasurement of a homestead, not to exceed in value the sum of one thousand dollars. The return of said appraisers was filed in the clerk's office for Marion County, December 11, 1886, and was lodged in the sheriff's office for said county December 15, 1886. No exceptions were filed to said returns.

Upon notice to the defendant, Wm. T. Evans, plaintiff's attorney moved before me, at March term, 1887, of the Common Pleas for said county, for an order confirming the report of Duncan Murchison and J. D. Montgomery, two of said appraisers, filed December 11, 1886, and for such further relief as may be just. As there are no exceptions to said returns, plaintiff is entitled to the order confirming the return of two of said appraisers, if such return is in compliance with the provisions of the statute relating to homestead exemption. If the statute requires the *concurrence of all three* of the appraisers in making a return, it would place it in the power of one of the appraisers dissenting for any reason to necessitate the expense and delay of a *reappraisement*. It seems to me that the return of two (2) of the appraisers is sufficient, if in all other respects regular, especially in this case, when the *third* appraiser dissents upon the ground that the other two have not complied with the order under which they were appointed. Judge Cothran's order could only refer to the assignment of a homestead as provided by statute.

It is ordered and adjudged, that the report of Duncan Murchison and J. D. Montgomery, two of the appraisers appointed to set apart and assign a homestead to the defendant, Wm. T. Evans, filed December 11, 1886, be, and the same is hereby, confirmed, and that the sheriff of Marion County do proceed under the above entitled execution, as provided in section 1996 of the General Statutes, as to the estate of the defendant, Wm. T. Evans, in the land referred to.

From this decree plaintiff appealed because the decree should have expressly directed the sheriff, or other officer, to sell the real estate mentioned in the return of the commissioners, and the

application of the proceeds of the sale, after reserving one thousand dollars for the homestead of W. T. Evans, to the execution of the plaintiff.

Defendant also appealed, his grounds being as follows: 1. Because his honor, Judge Witherspoon, erred in holding that the concurrence of a majority of the commission was sufficient to determine the defendant's estate of homestead.   2. Because his honor erred in subjecting the method of the admeasurement of homestead to the rules that obtain in arbitrations.   3. Because an arbitration is not a commission, and that his honor erred in holding otherwise ; and that an estate in homestead could be set off by a less number than three of the commissioners, and that the return of only two commissioners was illegal.

*Mr. C. A. Woods*, for plaintiff.

*Messrs. J. G. Blue* and *Evans & Evans*, for defendant.

April 23, 1888.   The opinion of the court was delivered by

MR. JUSTICE McIVER.   The main question involved in this appeal is whether the return of two out of the three appraisers appointed, under section 1994 of General Statutes, to set off the homestead of defendant, Evans, is legal and valid.   All of the appraisers acted together and two of them united in the return, while the third made a separate return, concurring with the other two as to the personal property, but dissenting from their judgment in relation to the real estate.

At common law the general rule was thus stated by Eyre, C. J., in *Grindley* v. *Barker*, 1 *Bos. & Pul.*, at page 236 : "Where a number of persons are entrusted with powers, not of mere private confidence, but in some respects of a general nature, and all of them are regularly assembled, the majority will conclude the minority, and their act will be the act of the whole."   This rule has been adopted in some of the States of the Union, and where it has, the test resorted to for the purpose of determining whether the act of a majority will be valid seems to be whether the act to be done was of a public or private nature—whether it affected the public generally, or only private individuals.   See

*People* v. *Nichols*, 52 *N. Y.*, 478, reported also in 11 *Am. Rep.*, 734, and also *Bank* v. *Mount Tabor*, 52 *Vt.*, 87, reported in 36. *Am. Rep*, 734, where the authorities are elaborately reviewed. In that case Shaw, C. J., is quoted as having laid down the rule, in *Williams* v. *School District* (21 *Pick.*, 75; 32 *A. D.*, 243), in the following language: "Where a body or board of officers is constituted by law to perform a trust for the public, or to execute a power or perform a duty prescribed by law, it is not necessary, that all should concur in the act done. The act of the majority, is the act of the body." From this language it would seem that this eminent judge did not regard the rule as confined to the case where the act to be done was of a public nature, but that it, should be extended so as to cover a case where the appointment was made by public authority; for he says that, where the appointment is "to perform a trust for the public, *or to execute a power or perform a duty prescribed by law*," the act of the majority would be sufficient. Now, if the rule be so extended, it would cover this case, for here the appraisers were appointed to perform a duty prescribed by law, by the order of the court.

But whether the common law rule can be so extended or not is a matter of no practical importance, for in this State the rule itself has been expressly repudiated, and the civil law rule recognized, as will be seen by reference to the cases of *Leatherwood* v. *Woodroof*, 2 *Brev.*, 380; *Lockart* v. *Kidd*, 2 *Mill Con. R.*, 217; *Black* ads. *Pearson*, 1 *McCord*, 137; and *Parnell* v. *Parnell*, 3 *Strob.*, 486, by which it was settled that an award by a majority of arbitrators was valid, whether the submission was under a rule or order of the court, or by the agreement of the parties. These cases are in direct conflict with the decisions in. those States which have adopted the English rule, as will be seen by reference to the cases hereinbefore cited from the American Reports, and more especially by reference to the case of *Green* v. *Miller* (6 *Johns.*, 3; 5 *A. D.*, 184), where it was held that, where there was a parol submission to five persons, all of them must join in the award, and this decision was placed expressly upon the English rule, the court considering that the "submission to arbitrators is a delegation of power, *for a mere private purpose.*"

Now, when we find that the courts of this State, at a very early period in its judicial history, departed from the English rule, and in the language of O'Neall, J., in *Parnell* v. *Parnell, supra;* "adopted the rule of the civil law, and of reason," and have ever since adhered to that rule, it would seem that we are bound to apply the same rule to this case, which is analogous to a case of arbitration. Indeed, there seems to be greater reason for applying it in this particular case, for in some of the cases above cited the civil law rule was applied even where the submission to arbitration was by a mere *private* agreement between the parties, and the arbitrators were not appointed by any order of the court; while here, by reason of the setting aside of the return of the appraisers first appointed, the appraisers whose action is here brought in question were *"appointed by the court,"* under the express provision of the act—section 1994 of General Statutes. It would seem, therefore, that whatever may be the rule elsewhere, in this State the return of a majority of the appraisers appointed to lay off the homestead is valid; especially in a case like the present where the appraisers were appointed, not by the parties, but by the court, to perform a duty prescribed by law.

The construction contended for by the appellant would lead to consequences which were certainly never intended by the legislature, and might practically defeat the rights of creditors. For, if all of the appraisers must concur in the return, the debtor might, by selecting an appraiser who would not agree to any appraisement made by the other two, effectually defeat, or at least indefinitely postpone, the creditor's right to enforce his execution; for the sheriff is forbidden by statute to sell until after the homestead has been set off, and thus, practically, the debtor would secure an exemption of all his property from sale, while the statute contemplates an exemption of a part only. The statute, therefore, makes such a provision for the appointment of the appraisers as will prevent such a result and at the same time avoid any injustice to the debtor. One of the appraisers being selected by the debtor would naturally be expected to look after the interests of the debtor, and the other, being selected by the creditor, who would be supposed to have in view the interests of the creditor, it could not well be expected that these two would agree,

and therefore the statute provides that the other appraiser, who would serve as a kind of umpire, shall be appointed by a public officer, who must be presumed to be impartial, in order that at least one of the appraisers should be entirely indifferent, with no prejudices in favor of either debtor or creditor.

Now, while it is quite true that where the language of a statute is plain and admits of but one construction the courts have no power to supply any real or supposed defects in such statute in order to avoid inconvenience or injustice, inasmuch as that is exclusively within the domain of the legislative department, yet where the terms of the statute are not plain, but admit of more than one construction, one of which leads to great inconvenience and injustice, and possibly to the defeat or obstruction of the legislative intent, then the court may, with a view to avoid such results, adopt some other construction more in accordance with the legislative intent. To use the language of Lord Kenyon, C. J., in reference to a similar question, in the case of *The King* v. *Beeston*, 3 *T. R.*, at pages 594 and 5 : "The construction contended for must have prevailed if the legislature had, in express terms, required it; but as it would be attended with manifest inconvenience, the argument *ab inconvenienti* ought to have great weight in this case where the legislature have not so required it. * * * And, indeed, if we were to determine otherwise, the inconvenience would be so great as to make it necessary for the legislature to interfere and pass another law." In this case the legislature has not, in express terms, required that all of the appraisers should concur in the return, and if we were to determine that all must concur, then it would be necessary for the legislature to interpose and pass another law, in order to avoid great inconvenience, expense, and delay, if not an entire defeat of the scheme provided for laying off the homestead.

As to the point raised by the plaintiff's appeal, it is clear that the order of the Circuit Judge was precisely in accordance with the statute. The return of the appraisers being to the effect that the land could not be divided so as to lay off the defendant's homestead without injury to the remainder, section 1996 of the General Statutes expressly provides what shall be the duty of the sheriff in such a case, before he could make a sale of the

premises, and the Circuit Judge could not, properly, have ordered him to make such sale, until after he had complied with the provisions of that section, as the defendant would otherwise have been deprived of a right secured to him by statute.

The judgment of this court is, that the judgment of the Circuit Court be affirmed.

MR. JUSTICE McGOWAN concurred.

MR. CHIEF JUSTICE SIMPSON, *dissenting.* The question involved in this case can be understood without stating the facts, further than to say, that upon application for a homestead, three commissioners were appointed, who having reported separately, and not agreeing, their reports were set aside, and three others appointed by the court; all of whom concurred as to the personalty, but only two agreed in a report as to the realty, stating that it could not be divided so as to give the petitioner a homestead of the value of $1,000, without serious detriment to the remainder, valuing the whole at $3,000. The third appraiser or commissioner dissented to the report of the majority as to said real estate. Upon motion his honor, Judge Witherspoon, confirmed the report of the said majority, and ordered "the sheriff to proceed, * * * under the section 1996, General Statutes."

The appeal of the petitioner denies the legality of a majority report by commissioners to set apart a homestead, and claims that all three should concur, otherwise it is illegal. The creditor also gave notice of appeal, because his honor did not expressly direct the sheriff to sell the real estate, and apply the proceeds, after deducting $1,000 for the homestead of the petitioner. So that the two questions are, first, whether in homestead proceedings the three commissioners appointed to lay off said homestead should agree, or whether the opinion of a majority should control. Second, whether, when a sale is necessary, because the homestead cannot be carved out of the land without detriment, the court upon a confirmation of the report should *expressly* order and direct said sale, or whether an order directing the sheriff to proceed under the act in such cases provided is sufficient.

In reference to the first question, the cases upon this subject seem to point to a distinction between the agencies appointed to

discharge the duty involved, to wit, whether they are public or private; holding that in public agents, such as commissioners, and boards organized for the discharge of some public duty, and acting under public authority, a majority may act, or may determine the result, but as to private interests in which the public is in no way connected, and where the appointees derive their authority from private parties, unless there is a stipulation to the contrary, either express or implied, all must concur. In *Cooly* v. *O'Connor* (12 *Wall.*, 398), the following language is used by Mr. Associate Justice Strong, which is a condensed statement of the principle, settled in many cases: "It is true," says the learned justice, "that when an authority is given jointly to several persons, they must generally act jointly, or their acts are invalid. This is a general rule for private agencies, though it is not universal in its application. But the rule is otherwise when the authority is of a public nature, as it was in this case. The commissioners were public agents, invested with public authority. They were created a board to perform a governmental function, and it is a familiar principle that an authority given to several for public purposes may be executed by a majority of their number."

This doctrine is sustained in a number of cases cited in a note to the above case. *Commonwealth ex rel. Hale* v. *Canal Comrs.*, 9 *Watts*, 471; *Jewett* v. *Alton*, 7 *N. H.*, 253; *Williams* v. *School Dist.*, 21 *Pick.*, 82; *McCoy* v. *Curtice*, 9 *Wend.*, 19; *Ex parte Rogers*, 7 *Cowen*, 527. And some of the cases decide that where a board or body of men (such as the vicar and church wardens of a parish) has been charged with administering a private charity, by a testator, it may be executed by a majority, because they were a *quasi* corporation. 6 *T. R.*, 388. In the matter of the assignment of dower, and in partition cases, where commissioners are necessary to determine the rights of the parties, a majority can act. This, however, is in accordance with the act of assembly providing the machinery in such cases, and therefore is not significant here, as the act in reference to commissioners to set off homesteads has no such provision.

In the absence, then, of power given to a majority, by the act of assembly authorizing the appointment of commissioners to set

off homestead, as in dower and partition cases, the question here must depend upon the general principle as laid down in the cases, *supra.* Are such commissioners public or private agents? It is true that they receive their authority to act by the provisions of a public law, a law applicable to all such cases. But are they, when appointed, a public body, or organization in the nature of a board, charged with a public duty? The weight of the decisions seem to require that they should occupy such a position, in order to authorize a majority to act, that their functions should in some way concern the public, and not simply private litigants. The commissioners to set off homestead are appointed by private individuals in part at least, to wit, the debtor and creditor, and the sheriff, who, it is true, is a public officer, and their duties concern private interests entirely. Two of them being selected, as we have said, by the respective litigants, to represent and to take care of their interests, and the third by the sheriff, who, having no interest, it is supposed would select one perfectly impartial, and thus in the theory of the act, the result being the compound production of these influences, will do justice to all parties. And it may be that on this account the legislature purposely abstained from incorporating in the act on this subject a provision authorizing a majority to do the work assigned said commissioners.

It is urged that for this court to hold that a concurrence of the entire commission is necessary, would be unfortunate, as such a principle would greatly obstruct and impede the enforcement of the rights of creditors where a homestead is claimed. If this be so, it would be a matter for the general assembly to remedy, and not for this court, as our functions are judicial and not legislative. We must declare the law as we find it, leaving alterations and amendments to the legislative department, as in its wisdom may be deemed necessary.

As to the appeal of the creditor. We think the section of the General Statutes, 1996, referred to in the decree of the Circuit Judge, sufficiently specifies the duty of the sheriff in cases like that before us, where the commissioners find that the homestead cannot be set apart in kind without detriment, and therefore it was unnecessary for him to expressly order a sale and direct the

34

application of the proceeds.    But it is not necessary to determine
this question now, as the judgment below must be reversed on
the other ground.

Judgment affirmed.